# Procedures for Implementing the Reciprocity Provisions of the Mineral Leasing Act of 1920

While the Department of Interior has no legal obligation to adopt substantive, prospective standards for applying the "reciprocity" provision of 30 U.S.C. § 181, if it chooses to do so it should comply with the public, notice-and-comment procedures applicable to agency rulemaking under the Administrative Procedure Act (APA). If the Department of the Interior instead continues to determine on a country-by-country basis whether another country's laws and regulations accord American investors "similar or like privileges," APA procedures would not be considered applicable to such decision-making. However, an adequate record for judicial review of the substance of the ultimate decision should be made.

As previously concluded, the Secretary of the Interior has authority under the Mineral Leasing Act of 1920 to "mirror" restrictive practices of another country. The question whether the Secretary is required to do so, or whether he could choose to take some more extreme action such as barring any investment by the other country's citizens, is not addressed.

August 27, 1981

## MEMORANDUM OPINION FOR THE UNDER SECRETARY, DEPARTMENT OF THE INTERIOR

You have requested this Department's comments on certain proposed actions that would implement the "reciprocity" provision of the Mineral Leasing Act of 1920, 30 U.S.C. § 181.[1]

### I. Actions to Implement § 181

It is not clear to us precisely what your Department's intent may be regarding the implementation of the "reciprocity" provision of § 181. If the intent is to promulgate general, substantive standards for the future governing the determination whether another country affords Americans "similar or like privileges" under § 181, we would recommend adoption of public notice-and-comment procedures meeting the requirements of 5 U.S.C. § 553. Even though we do not believe your Department has any legal obligation to adopt substantive, prospective stand-

---

[1] The "reciprocity" provision is as follows.

> Citizens of another country, the laws, customs or regulations of which deny similar or like privileges to citizens or corporations of this country, shall not by stock ownership, stock holding, or stock control, own any interest in any lease acquired under the provisions of this chapter.

30 U.S.C. § 181.

279

ards for applying § 181,[2] if you do so a court likely would conclude that such action comes within the definition of "rule making" for purposes of the Administrative Procedure Act (APA).[3] Although an argument might be made that such rulemaking is exempt from the requirements of § 553 on the ground that is involves a foreign affairs function of the United States, 5 U.S.C. 553(a)(1), that argument would be difficult to sustain so long as your Department's intent is to enunciate general standards for application of the statutory phrase "similar or like privileges" apart from specific consideration of this Nation's relations with another country.[4] Furthermore, since your Department in the past has not enunciated general standards implementing § 181, a public notice-and-comment procedure consistent with § 553 designed to promulgate standards for applying § 181's "similar or like privileges" provision could well generate comments that may prove useful in framing the final standards. Finally, if your intention is to conduct a rulemaking, it is not a great deal more cumbersome to comply with § 553, and if you are going to go part of the way, it would be prudent to go all of the way and avoid any possible claim that § 553 was violated. To the extent that this is your intent, the notice-and-comment procedure should include at a minimum the following elements: (1) general notice to be published in the Federal Register, including a statement of the time, place, and nature of the proceedings, a reference to the legal authority under which the rule is to be promulgated, and either the terms or substance of a proposed rule or "a

[2] There is no requirement in the Mineral Leasing Act of 1920 that the Secretary of the Interior promulgate rules to implement § 181. However, the Act clearly authorizes such action: "The Secretary of the Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this chapter. . . ." 30 U.S.C. § 189.

[3] A "rule" is defined broadly by the APA as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy. . . .", 5 U.S.C. § 551(4), and a "rule making" is defined as the "agency process for formulating, amending, or repealing a rule," 5 U.S.C. § 551(5). The paradigm of APA rulemaking is "the implementation or prescription of law or policy for the future, rather than the evaluation of a respondent's past conduct. Typically, the issues relate not to the evidentiary facts, as to which the veracity and demeanor of witnesses would often be important, but rather to the policy-making conclusions to be drawn from the facts." *Attorney General's Manual on the Administrative Procedure Act* 14 (1947), *quoted in American Airlines, Inc.* v. *CAB,* 359 F.2d 624, 629 (D.C. Cir. 1966); *See also* S. Rep. No. 752, 79th Cong., 1st Sess. (1945), *reprinted in* S. Doc. No. 248, *Administrative Procedure Act—Legislative History,* 79th Cong., 2d Sess. 199 (1946). Whatever else may be said about the applicability of the APA's definitions of a "rule" and "rule making," they would appear to apply to a process in which the Department of the Interior establishes general, substantive standards "for the future" governing whether another country accords American citizens "similar or like privileges" under 30 U.S.C. § 181.

[4] *See* S. Rep. No. 752, 79th Cong., 1st Sess. 11 (1945) (the foreign affairs exception "is not to be loosely interpreted to mean any function extending beyond the borders of the United States but only those 'affairs' which so affect relations with other governments that, for example, public rule making provisions would clearly provoke definitely undesirable international consequences"), *reprinted in* S. Doc. No. 248, *Administrative Procedure Act—Legislative History,* 79th Cong., 2d Sess. 199 (1946), *Hou Ching Chow* v. *Attorney General,* 362 F Supp. 1288, 1290 (D. D.C. 1973) (holding that determinations regarding the adjustment of an alien's status and labor certification requirements are not exempt as foreign affairs functions). *Cf. WBEN, Inc.* v. *United States,* 396 F.2d 601, 616 (2d Cir.), *cert. denied* 393 U.S. 914 (1968) (holding, *inter alia,* that the FCC was on "firm ground" in concluding that negotiation by the United States on a new agreement with Canada regarding pre-sunrise broadcasting on AM radio was an exempt foreign affairs function).

description of the subjects and issues involved"; (2) an opportunity for interested persons to participate through submission of written data, views, or arguments with or without opportunity for oral presentation; and (3) a concise general statement of the basis and purpose of the rules ultimately promulgated, including a discussion of major comments received from interested persons.[5]

On the other hand, your Department may not intend to promulgate general, prospective standards implementing the "reciprocity" provision of § 181. Rather, it may intend to continue to determine on a country-by-country basis whether another country's laws and regulations accord Americans "similar or like privileges." Although an argument could be made that such country-by-country decisionmaking should be governed by § 553 rulemaking, we do not believe, as we have indicated orally, that § 553 or other provisions of the Administrative Procedure Act should be considered applicable to such decisionmaking.[6] First, the determination whether another country's laws and regulations accord "similar or like privileges" requires an assessment of the facts—regarding the way another country's laws affect investment by Americans as compared with the way this country's laws affect investment by that country's citizens—at the time the decision is made. It thus is in the nature of a backward-looking evaluation of facts in light of existing statutory requirements. That decision is not of a type covered by "rule makings" for APA purposes, which are geared toward the promulgation of general standards "for the future." [7] Second, even if such a decision about another country were to be considered covered by the APA's definitions of a "rule" and "rule making," so long as the decision is directed—as it presumably would be—toward interpreting official acts of a foreign government and ascertaining what responses the United States might make to restrictive laws or regulations of the other country, such a decision would be within the foreign affairs exemption from § 553 procedures. *See* 5 U.S.C. § 553(a)(1); S. Rep. No. 752, 79th Cong., 1st Sess. (1945), *reprinted in* S. Doc. No. 248, *Administrative Procedure Act—Legislative History,* 79th Cong., 2d Sess. 199 (1946).

If your Department were to proceed on a country-by-country basis and not adopt public notice-and-comment procedures for establishing general standards governing whether another country accords "similar or like privileges," it would be necessary to bear in mind that judicial review of informal, case-by-case decisions not covered by § 553 may be obtained in appropriate cases. In particular, a decision whether another

---

[5] In addition, the notice-and-comment procedures should conform with the Department's own regulations governing its rulemaking activities, *see* 43 C.F.R. Part 14, and with Executive Order No 12,291, 46 Fed. Reg. 13,193 (1981).

[6] The Mineral Leasing Act of 1920 does not require that determinations under § 181 be made "on the record" after opportunity for agency hearing. Thus, the APA procedures for "on the record" determinations do not apply. *See* 5 U.S.C. §§ 553(c), 554, 556, & 557

[7] *See* n 3, *supra.*

281

country accords "similar or like privileges" could be challenged as contrary to the substantive requirements of § 181 (*e.g.,* on the ground that a legally incorrect interpretation of § 181 was applied), or as "arbitrary" or "capricious" in the context in which it was made (*e.g.,* on the ground that there was no rational basis on which the Secretary could make such a determination). *See Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U.S. 402, 410 (1971); *Camp* v. *Pitts,* 411 U.S. 138, 142 (1973). Thus, if a country-by-country approach were taken, your Department would need to follow a decisionmaking process that would provide an adequate record for judicial review of the substance of the ultimate decision. We do not believe, however, that any statute, including the Administrative Procedure Act, requires that a particular process be followed.[8]

## II. The Substance of § 181

I am attaching for your information an opinion of this Office, dated August 11, 1981, discussing the question whether the Secretary may "mirror" restrictive practices of another country, thereby restoring "similar or like privileges" under § 181 and averting the need to bar "any" interest in "any" lease by citizens of the other country.[*] We concluded that the Secretary has such "mirroring" authority under the Mineral Leasing Act of 1920. We understand that this conclusion is consistent with the practice of the Department of the Interior, which on at least two occasions has "mirrored" other countries' restrictions pertaining to the percentage of foreign ownership of corporations having interests in those countries' mineral resources.[9]

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legislative Affairs*

---

[8] Our discussion of the procedures for implementing § 181 has focused on the question that appears central to your Department's present concern, namely, how to establish a process for determining whether another country accords "similar or like privileges." Once such a determination is made, further questions are likely to arise regarding the appropriate means for applying a determination about a given country to particular parties seeking federal mineral leases. We would be glad to assist in resolving such questions as they arise.

[*] NOTE: The August 11, 1981 Memorandum Opinion, "Restrictions on Canadian Ownership of Federal Mineral Leases Under the Mineral Leasing Act of 1920," is reprinted in this volume at p. 250, *supra.* Ed.

[9] We would not want this memorandum or our opinion of August 11, 1981, to be understood as resolving the additional question whether, assuming the Secretary could as a practical matter "mirror" another country's restrictions on foreign investment, the Secretary would be bound to do that, or whether he could choose whether to do that or to take a more extreme action such as barring "any" investment by the other country's citizens in federal mineral leases. We have not addressed that issue. We suggest that specific attention be given this question if the Secretary would consider taking more restrictive action than "mirroring" under § 181.